UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN WALKER<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF POCATELLO, a political subdivision of the State of Idaho; SCOTT MARCHAND, in his individual and official capacity; BRIAN BLAD, in his individual and official capacity, and ROGER SCHEI, in his individual and official capacity,<br><br>　　　　Defendants. | Case No. 4:15-cv-0498-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

Pending before the Court is Defendants City of Pocatello, Scott Marchand, Brian Blad and Roger Schei's Motion to Dismiss (Dkt. 11). Defendants seek to dismiss plaintiff John Walker's state law claims (Counts III–VI) against Defendants Scott Marchand and Roger Shei for failure to post bond under I.C. § 6-610, and seeks to dismiss the Negligent Infliction of Emotional Distress (NIED) claims set forth in Count VI for failure to state a claim for relief. For the following reasons, the Court will grant the motion in part and deny the motion in part.

MEMORANDUM DECISION AND ORDER - 1

BACKGROUND

Plaintiff John Walker brings federal and state claims against the defendants regarding their treatment of him in their capacity as supervisors within the Pocatello Police Department ("PPD"), as well as the defendants' alleged interference with Walker's efforts to procure employment outside of the PPD. *See generally, Am. Compl.* (Dkt. 3).

Walker has worked as a police officer with PPD since September 1996. *Id.* at ¶ 11, Dkt. 3. Defendant Marchand is the Pocatello Chief of Police, and Defendant Schei is a PPD Captain who supervised Walker. Although Walker suggests that a number of adverse employment actions were unfairly taken against him since June 2012, Walker's claims primarily stem from the individual defendants' alleged interference with Walker's efforts to be hired as the Director of Public Safety at Idaho State University. *Id.* at ¶ 51–58, Dkt. 3.

Walker alleges that the defendants' actions violated his First Amendment rights to Freedom of Speech and Fourteenth Amendment rights to Due Process. *See id.* at ¶ 61–74, Dkt. 3. Additionally Walker asserts that the defendant's conduct was tortious under Idaho law. *Id.* at ¶ 75–89, Dkt. 3.

ANALYSIS

1. **Defendants' Motion to Dismiss under I.C. § 6-610**

Defendants seek to dismiss Walker's state law claims against defendants Marchand and Schei for a failure to post bond under Idaho Code § 6-610.[1] Under Idaho law, "[b]efore *any* civil action may be filed against *any* law enforcement officer or service of civil process on *any* law enforcement officer," plaintiffs are required to post bond prior to or simultaneously with the filing of the Complaint. *See* I.C. § 6-610(2) (emphasis added). Although not a jurisdictional requirement, posting bond is "mandatory" and a failure to post bond requires the trial court judge to dismiss the claims immediately without prejudice. I.C. § 6-610(5); *see also Monson v. Boyd*, 348 P. 2d 93, 97 (Idaho 1959). It is undisputed that plaintiff failed to post bond in this case.

In response, Walker argues that I.C. § 6-610 does not apply because the alleged claims do not arise from Marchand and Schei's "duty" as law enforcement officers. Under the statutory language relevant here, the bond requirement only applies when the action "arises *out of, or in the course of the performance of his duty*. . . ." I.C. § 6-610(2) (emphasis added). Walker contends that a law enforcement officer is only acting within "the course of the performance of his duty," when he or she is involved in the enforcement of Idaho's criminal laws. Under this view, the bond requirement imposed by the statute would not apply here, where Walker's claims are unrelated to Marchand and

---

[1] I.C. § 6-610 only applies to claims against "law enforcement officers." Therefore, any claims against defendant City of Pocatello, as well as Mayor Brian Blad are not subject to the motion to dismiss under the statute.

Schei's law enforcement activities, and focus solely on their actions in supervising him and interfering with his efforts to obtain other employment.

In making this argument, Walker relies upon the language of I.C. §6-610(1) which defines "law enforcement officer" for purposes of the statute as follows:

> . . . a "law enforcement officer" shall be defined as any court personnel, sheriff, constable, peace officer, state police officer, correctional, probation or parole official, prosecuting attorney, city attorney, attorney general, or their employees or agents, **or any other person charged with the duty of enforcement of the criminal, traffic or penal laws of this state** or any other law enforcement personnel or peace officer as defined in chapter 51, title 19, Idaho Code.

*Id.* (emphasis added). Plaintiff's reliance on Idaho Code § 6-610(1) is misplaced. While the statute does define the term "law enforcement officer," with reference to an officer's duty to enforce the state's criminal laws, it does not use that language in defining or explaining the phrase, "out of, or in the course of the performance of his duty."

Otherwise stated, the language relied upon by Walker tells us "who" is a law enforcement officer, and therefore protected by the statute, but it does not tell us "which" activities of a law enforcement officer fall within the ambit of the statute's protections. And it is that latter inquiry, rather than the former, which must be answered here.

In answering the question posed by the Defendants' motion, the Court does not write on a blank slate. The judges in this Court have previously determined that Idaho's bond requirement applies to a supervising law enforcement officers' adverse employment decisions regarding their subordinates. *See Cameron v. Owyhee Cnty.*, No. CV-09-423, 2010 WL 2594953, at *2 (D. Idaho June 22, 2010); *see also Timothy v. Oneida Cnty.*,

2014 WL 4384348 at * 1 (D. Idaho September 3, 2014) (Order setting bond at $5,000 for state wrongful termination claims against prosecuting attorney). Applying basic principles of statutory construction, I reach the same conclusion here. The necessary first step in interpreting a statute is "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). In addition, "unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints v. Ada Cnty,* 849 P.2d, 83, 88 (Idaho 1993). Here, "duty" is ordinarily defined as, "obligatory tasks, conduct, service, or functions enjoined by order or usage according to rank, occupation, or profession." *Webster's Third New International Dictionary* 705 (3rd. ed. 1993), "duty." Therefore, a law enforcement officer's "duties" are ordinarily understood to apply to *all conduct* that is required by that individual's "rank, occupation, or profession." *Id.* There is nothing in the plain or ordinary meaning of the word that suggests "duty" should be limited only to the specific subcategory of "enforcement" responsibilities, as urged by Walker. Nor does the statute expressly, or even implicitly, limit the bond requirement to claims arising out of the course of an officer's law enforcement duties." *See* I.C. § 6-610(2).

      This conclusion is supported by other principles of statutory construction. The requirement that the conduct arise out of the law enforcement official's "duty" is a limitation upon the statute's general requirement that the plaintiff must file a bond with

**MEMORANDUM DECISION AND ORDER - 5**

the court before pursuing a civil claim against a law enforcement officer. In interpreting a statutory exception, courts "usually read the exception narrowly in order to preserve the primary operation of the provision." *C.I.R. v. Clark*, 489 U.S. 726, 739 (1989). A "narrow reading" of the general duty requirement would support a broad *definition* of the term "duty," rather than the limited interpretation Walker asks this Court to adopt.

The Court will therefore grant defendants' motion and dismiss Counts III–VI without prejudice. This decision shall apply only to defendants Marchand and Schei insofar as their conduct arises from their official capacities as law enforcement officials.

**2. Failure to State a Claim for Negligent Infliction of Emotional Distress.**

Defendants also seek to dismiss Count VI of Walker's Amended Complaint for Negligent Infliction of Emotional Distress (NIED) as alleged against all named defendants. Defendants argue that a claim for NIED is precluded in the context of employment actions because employment decisions are inherently "intentional" rather than negligent. Therefore, Defendant argues, an emotional distress claim in the employment setting must be pursued as a claim of the intentional infliction of emotional distress (IIED). *See Defs' Reply*, at 7, Dkt. 14.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. "Determining whether a

**MEMORANDUM DECISION AND ORDER - 6**

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A claim for NIED is not *automatically* precluded simply because it arises in the context of an employment decision. *See Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P. 3d 613, 625 (Idaho 2013) (summary judgment denied for NIED in context of retaliation claim). Although defendants cite to a "string" of California cases that support their claim, Walker's NIED claim arises out of Idaho law in which there is no indication that an NIED claim is not *plausible* for purposes of surviving a Motion to Dismiss. Defendants also cite to *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P. 3d 1263, 1273 (Idaho 2012), for the proposition that all employment conduct is "intentional." However, the Idaho Supreme Court granted summary judgment in that case, not because an NIED claim in an employment setting is inherently deficient, but because the plaintiff failed to establish that a "duty" was owed to the plaintiff, which is the first element of an NIED claim.[2] *Id.* at 1274.

Accepting the allegations of Walker's complaint as true, it is clear that he has alleged various instances in which the Defendants breached protocol by disciplining

---

[2] An NIED claim requires a showing of "(1) a legally recognized duty, (2) a breach of that duty, (3) a causal connection between the defendant's conduct and the breach, and (4) actual loss or damage." *Bollinger v. Fall River Rural Elec. Co-op., Inc.*, 272 P. 3d 1263, 1273 (Idaho 2012).

Walker, challenging his sincerity, and ultimately prevented him from obtaining alternative employment. *See generally, Am. Compl.*, Dkt. 3. It is "plausible" that such conduct did not arise out of the intentional conduct of the remaining defendants, but rather was a mere negligent breach of duty. The issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007) (citations omitted). The Court finds that Walker is entitled to offer additional evidence in support of his NIED claim.

## ORDER

IT IS HEREBY ORDERED:

1. Defendants' City of Pocatello, Scott Marchand, Brian Blad and Roger Schei's Motion to Dismiss (Dkt. 11) is **GRANTED in part** and **DENIED in part**. It is granted, without prejudice, as to Counts III-VI against defendants Marchand and Schei. It is denied as to Count VI.

DATED: July 20, 2016

B. Lynn Winmill
Chief Judge
United States District Court