UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN WALKER,<br><br>                Plaintiff,<br><br>v.<br><br>CITY OF POCATELLO, *et. al.*,<br><br>                Defendants. | Case No. 4:15-cv-00498-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTROCUDTION

The Court has before it Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. 24).

## LEGAL STANDARD

In accordance with the parties' stipulated litigation plan, the Court's Case Management Order set a July 1, 2016 deadline for amendment of pleadings. Motions to amend a pleading filed after the scheduling order deadline has expired are governed by the more restrictive provisions of Rule 16(b), which require a showing of "good cause." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.1992). Thus, rule 16(b), not 15(a), governs Walker's request to amend the complaint.

A court should find good cause only if the moving party shows it "could not reasonably meet the established timeline in a scheduling order despite the party's diligence." *DIRECTV, Inc. v. Busdon*, 2005 WL 1364571, at * 1 (D.Idaho 2005). Rule 16

was designed to facilitate more efficient disposition of cases by settlement or by trial. *Johnson*, 975 F.2d at 610–11. If disregarded it would "undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. *Id.*; *see also* Rule 16 Advisory Committee Notes (1983 Amendment). The moving party's diligence governs the good cause standard. *Johnson*, 975 F.2d at 608. "When determining whether to grant a motion to amend a scheduling order, a court may also consider "the existence or degree of prejudice to the party opposing the modifications." *Id*.

## ANALYSIS

Walker wants to amend his complaint to add "causes of action for violations of the FMLA, retaliation under the Rehabilitation Act, as well as additional violations of his constitutional rights." *Plf. Br.*, p. 2, Dkt. 24-3. He wants to amend his complaint now because he only recently – March 2017 – learned about the Pocatello Police Department's investigation into his FMLA leave.

The new factual allegations in his proposed Second Amended Complaint can be summed up as follows: (1) Walker took FMLA leave in September 2015 to address a medical condition with his kidneys; (2) He used his own accrued personal time off to make up for his lost wages; (3) Chief Marchand or Captain Schei ordered other officers to surveil him as part of an investigation into whether he was violating worker's compensation or FMLA leave; (4) The officers tracked him with a GPS-like electronic tracking device, and secretly recorded and photographed him; (5) His direct supervisor, Captain Schei, pressured him to work while on leave, and then placed a memorandum in

**MEMORANDUM DECISION AND ORDER - 2**

his personnel file complaining of a large list of work items he did not complete while on FMLA leave; and (6) After returning from FMLA leave, Chief Marchand promoted a less qualified applicant instead of him because of his use of FMLA leave.

As expected, Defendants dispute many of these factual allegations. Some of them could easily be resolved without much effort. For example, whether the police department tracked Walker with a GPS-like device. But other disputes are more of a typical credibility dispute, such as, whether Walker's FMLA leave affected his promotion. And some of the facts are not in dispute – like the fact that the police department recorded Walker at his Father's farm.

But now is not the time to resolve these disputes. The question here is whether Walker was diligent in bringing the new claims, and whether the allegations are futile. As to diligence, the Court finds that Walker was diligent. Although there is some dispute over whether Walker should have specifically asked for discovery regarding his FMLA leave earlier in the case, it is unreasonable to suggest he should have known about the alleged surveillance before being told about it. And once he did learn about it, in March 2017, he promptly asked to amend his complaint.

Regarding the specific claims added in the amended complaint, the prima facie elements of an FMLA interference claim are that the plaintiff (1) was eligible for the FMLA's protections, (2) the employer was covered by the FMLA, (3) the plaintiff was entitled to leave under the FMLA, (4) the plaintiff provided sufficient notice of his intent to take leave, and (5) the employer denied him FMLA benefits to which he was entitled. *Sanders v. City of Newport,* 657 F.3d 772, 778 (9th Cir. 2011). Defendants suggest this

MEMORANDUM DECISION AND ORDER - 3

claim is futile because Walker cannot show that he was denied FMLA benefits. However, in an FMLA interference claim, "[t]he regulations explain that this prohibition encompasses an employer's consideration of an employee's use of FMLA-covered leave in making adverse employment decisions." *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1122 (9th Cir. 2001). Walker asserts that his direct supervisor pressured him to work while on leave, and then placed a memorandum in his personnel file complaining of a large list of work items he did not complete while on FMLA leave. He also asserts that after returning from FMLA leave, Chief Marchand promoted a less qualified applicant instead of him because of his use of FMLA leave. These allegations are sufficient to pursue the interference FMLA claim.

Defendants make essentially the same arguments regarding the FMLA retaliation claim and the Rehabilitation Act retaliation claim – arguing that there was no adverse employment action. But the same allegations asserted in the FMLA interference claim apply to these claims. That is, an assertion that his direct supervisor pressured him to work while on leave, and then placed a memorandum in his personnel file complaining of a large list of work items he did not complete while on FMLA leave, and an assertion that Chief Marchand promoted a less qualified applicant instead of him because of his use of FMLA leave, are sufficient allegations of negative employment retaliation.

Finally, regarding the § 1983 invasion of privacy claim, there is a significant factual dispute. Walker asserts that he was tracked by GPS, photographed and recorded while in his home and the home of relatives. Defendants contend they only captured

video of him driving about in public. As noted above, this is not the time to resolve these factual disputes. And as pled, the allegations support Walker's claim.

But given the evidence before the Court and the disagreements among the parties, the Court has some concern about whether this claim could succeed. If Walker was not tracked by GPS or photographed and recorded in his home or his Father's home, his claims seem specious. And being photographed in an open field is typically not a privacy violation. Pursuant to the open fields doctrine, there is no objective expectation of privacy in most open areas. The open fields doctrine permits officers to enter and search a field without a warrant. *Oliver v. United States*, 466 U.S. 170, 173 (1984). This interpretation of the Fourth Amendment tracks with the right to privacy found in Fourth Amendment jurisprudence. *Id*. at 177, 104 S.Ct. 1735. The rule provides that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home." *Id*. at 178. Moreover, "[i]t is not generally true that fences or 'No Trespassing' signs effectively bar the public from viewing open fields in rural areas." *Id*. at 179. Thus, courts consistently recognize that an expectation of privacy in an open field is not an expectation which society recognizes as reasonable. *Id*.

The law does, however, distinguish open fields from curtilage. *Id*. at 180, 104 S.Ct. 1735. Curtilage is "the land immediately surrounding and associated with the home." *Id*. Unlike open fields, curtilage requires Fourth Amendment protections which attach to the home. *Id*. At common law, curtilage consisted of "the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of

**MEMORANDUM DECISION AND ORDER - 5**

life, and therefore has been considered part of home itself for Fourth Amendment purposes." *Id*. (Internal quotation and citation omitted). Courts have since defined curtilage by reference to factors that "determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private." *Id*. (Additional citations omitted).

The bottom line on the right of privacy claim is that, as pled, the claim may proceed. But the Court strongly encourages counsel to investigate the facts surrounding this claim and determine whether the facts really support the claim as pled. The Court also directs the parties to an earlier decision it issued addressing privacy in open fields, which may be helpful to their investigation – *Dunham v. Kootenai County,* 690 F.Supp.2d 1162 (D.Idaho 2010).

Accordingly, the Court will grant the motion to amend. Moreover, the Court will re-open discovery for a short time to allow the parties to address the new claims. Counsel shall meet and confer about the scope and time-frame for such discovery, but the Court envisions about a 60-day period. If the parties cannot agree on the scope and time-frame, they shall contact Jeff Severson, the law clerk assigned to this case, to informally mediate their differences.

## ORDER

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. 24) is **GRANTED**.

DATED: May 1, 2017



_____
B. Lynn Winmill
Chief Judge
United States District Court